FILED
2017 Feb-24 PM 04:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FILED

2011 FEB 24 P 3: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| FAIRFIELD COMMUNITY CLEAN UP CREW, INC., | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No.: |
| v. | * | |
| | * | |
| MIKE HALE in his official capacity as | * | CV-17-00-00 08-S |
| Jefferson County Sheriff, STEVE MARSHALL, | * | |
| in his official capacity as Attorney General | * | |
| | | |
| Defendants, | | |

**VERIFIED COMPLAINT FOR DECLARATORY
& INJUNCTIVE RELIEF**

**INTRODUCTION**

1.  This case challenges the interpretation of a state law depriving Plaintiff's of their constitutional right to operate a legal business, contract with public entities, and to use licenses and permits issued by public authorities provided under the Constitution of Alabama. This right is guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, as well as, Alabama Constitutional Amendment No. 386 and 600.

2.  Plaintiff, Fairfield Community Clean-Up Crew, Inc. ("Community"), a non-profit corporation under the laws of Alabama and a proper charitable organization pursuant to the Fairfield Municipal Bingo Ordinance No. 1024G (**Exhibit A**)

provides citizens the ability to participate in the game of bingo legally allowed under Alabama Constitutional Amendments No. 386 and 600 (**Exhibit B**).

3. The Alabama Constitutional Amendments give respective cities and towns the authority to allow proper charitable organizations to operate bingo games if they chose to do so with no mention of electronic bingo being prohibited.

4. These said governing bodies have the right to authorize bingo being played electronically so long as their rules and regulations fall within the provisions listed in Amendment 386 and 600.

5. Tribal lands in Alabama are allowed to conduct bingo operations so long as they strictly follow the bingo laws of the state. The Indian Gaming Regulatory Act ("IGRA") authorizes the National Indian Gaming Commission (the "NIGC") to closely monitor gaming on Indian lands to ensure they follow the state law and do not operate illegal bingo games.

6. Community's charitable bingo facility has been extremely successful and has benefited the City of Fairfield with increased economic support to its city employees, school district, and local businesses. Unfortunately, the State of Alabama has unequally and unconstitutionally prohibited Community to operate its charitable bingo facility due to allegations of illegal gaming activity that is considered to be legal on tribal lands.

7. Community seeks to protect and vindicate their rights to operate charitable electronic bingo without being subjected to the unconstitutionally arbitrary and discriminatory treatment established by the State of Alabama. Community seeks a

temporary restraining order and injunctive relief to allow Community to continue to operating its facility.

## JURISDICTION AND VENUE

8. Community alleges deprivation of rights secured by the Due Process and Equal Protection of the Fourteenth Amendment as protected by 42 U.S.C. §1983. Jurisdiction over their claims is vested in this Court by 28 U.S.C. §1331. Also, Community alleges rights secured by Constitutional Amendments 386 and 600 of the Alabama Constitution and City of Fairfield Ordinance No. 1024G.

9. Venue is proper in this District under 28 U.S.C. §1391(b) on the grounds that Community's facility and operations, and the specific events giving rise to the cessation of their business are located and arose in this District.

## PARTIES

10. Plaintiff, Fairfield Community Clean-Up Crew, Inc. is a properly formed domestic non-profit corporation under the laws of the State of Alabama and a proper charitable organization pursuant to the Fairfield Municipal Bingo Ordinance No. 1024G.

11. That the Defendants, Mike Hale in his official capacity and Steve Marshall in his official capacity are both government entities.

## FACTUAL ALLEGATIONS

12. That the Constitution of Alabama 1901 as amended by Amendment 386 and Amendment 600 (the "Amendment") states that the operation of bingo games for prizes or money by nonprofit organizations for charitable or educational purposes shall be legal in Jefferson County, subject to the provisions of any resolution or

ordinance by the county governing body or bodies of the respective cities and towns, within their respective jurisdictions and in compliance of the specific provisions of the Amendment (**Exhibit B**).

13. That the City of Fairfield ("Fairfield"), has enacted a city ordinance based on the authority given to cities and towns under the Amendment that establishes rules and regulations for the licensing and operation of charity bingo games within the city limits of Fairfield (the "Bingo Ordinance"). See **Exhibit A**.

14. That Community began operating its legal charitable bingo operation in accordance with both the Amendment and the Bingo Ordinance.

15. That Community was given notice by the Sheriff and the Attorney General that it is in violation of Alabama State law by operating illegal gambling device/slot machine and was order to cease operation.

16. That the Alabama Code does state that gambling devices, including slot machines, are illegal and prohibited under Ala. Code§ 13A-12-20(5) and Ala. Code§ 13A-12-20(10).

17. That electronic bingo machines and slot machines are two completely different classes of machines defined by Congress under 25 U.S.C. § 2703(7) and 25 U.S.C. § 2703(8).

18. That there is no mention in the Alabama Constitution or its Amendments stating that bingo cannot be played electronically, the respective cities and towns located in Jefferson County have the authority to determine the rules and regulations of whether or not bingo can be played electronically.

19. That in *State of Alabama v. PCI Gaming Authority et al*, 801 F.3d 1278, 1285 (11th Cir. 2015), the Court rejected all of State of Alabama's claims against the Poarch Band Creek Indians ("Band"), including one claim of public nuisance that stemmed from their original lawsuit claiming that the Band was operating illegal slot machines within Alabama.

20. That IGRA regulates Indian gaming on tribal lands and permits a tribe to conduct the class of gaming that is allowed within that state where the Indian land is located. 25 U.S.C. § 2710(b)(1), (d)(1).

21. That IGRA defines class II games to include bingo and allows the use of electronic, computer, or other technologic aids in connection with the game. 25 U.S.C. § 2703(7)(A)(i). Class III gaming includes slot machines and other casino games but a state must agree to a tribal-state compact in order to allow such games. 25 U.S.C. § 2710(d)(1), (d)(3).

22. That IGRA authorizes the NIGC to regulate gaming on Indian lands and to continuously monitor that only class II gaming is occurring unless a state has a tribal-state compact allowing for class III gaming. 25 U.S.C. § 2706(b)(1), (b)(2) and 25 U.S.C. § 2713(a)(1), (b).

23. *State of Alabama v. PCI Authority* stated that bingo is generally prohibited under the Alabama Constitution except for some towns and counties that permit nonprofit entities to operate for charitable, educational, or other lawful purposes and refers to Alabama Constitutional Amendments: 386-87, 413, 440, 506, 508, 542, 549-50, 565, 569, 599, 612, 674, 692, 732, 743-4. 801 F.3d 1278, 1285 (11th Cir. 2015).

24. The Court further stated that "because some bingo gaming is allowed under Alabama law and the NIGC Chairperson approved the Tribe`s ordinance to participate in class II gaming, the Tribe may operate bingo games at its casinos. The Tribe may not, however, operate slot machines at its casinos because Alabama prohibits the operation of slot machines within the state". *Id.*

25. That there is no tribal-compact to allow class III gaming in the state of Alabama.

26. That Community is not in violation of Alabama's gaming laws because they are not operating slot machines.

27. That Community is in accordance with Alabama state law as it is operating legal bingo games at its facility and is allowed to provide electronic games within its discretion.

28. That the cities and towns have the authority to allow technological progress of its games from paper to electronic.

29. That the technological advancement of playing bingo electronically is no different than filing this said Complaint electronically via PACER than previously at the Courthouse.

30. That in *Barber v. Cornerstone Community Outreach, Inc.* So. 3d 65 (Ala. 2009), the Supreme Court of Alabama stated that these constitutional amendments only allow bingo in the traditional paper form. That is the equivalent of the US Supreme Court stating that the 2nd amendment of the US Constitution only allows a citizen the right to keep and bar arms that are in the form of a flintlock musket.

31. That Congress created IGRA to make tribal gaming equal with the state's gaming laws, not to make them superior or give them an advantage over the state.

## PLAINTIFF'S CLAIM FOR DEFENDANT'S VIOLATION OF PLAINTIFF'S 14ᵀᴴ AMENDMENT EQUAL PROTECTION CLAUSE; 42 U.S.C. § 1983

32. Community adopts, re-alleges, and incorporates by reference all contents of paragraphs 1-31 as if fully set forth herein.

33. That the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits Defendant's from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

34. The State of Alabama has disparately applied gaming laws to tribal and non-tribal citizens. This disparate treatment deprives Community of their rights secured by the Fourteenth Amendment.

35. Community's move for relief on this claim directly under the Constitution and as an action seeking redress of the deprivation of statutory rights under the color of state law, also under 42 U.S.C. § 1983.

## PLAINTIFF'S CLAIM FOR DEFENDANT'S VIOLATION OF PLAINTIFF'S 14ᵀᴴ AMENDMENT DUE PROCESS 42 U.S.C. § 1983

36. That Community adopts, re-allege, and incorporate by reference all contents of paragraphs 1-35 as if fully set forth herein.

37. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, "nor shall any State deprive any person of life, liberty, or property, without due process of law."

38. That seizing the electronic bingo machines without issuing a hearing will deprive Community their liberty or property interests in the Alabama state courts of due process of law, in violations of the Fourteenth Amendment Due Process Clause.

39. Plaintiff moves for relief on this claim as an action seeking redress of the deprivation of statutory rights under the color of state law, also under 42 U.S.C. § 1983.

## COUNT ONE- REQUEST FOR TEMPORARY RESTRAINING ORDER

40. That Community adopts, re-alleges, and incorporates by reference all contents of paragraphs 1-39 as if fully set forth herein.

41. **WHEREFORE,** Plaintiff respectfully requests this Court the following:

    a.  to issue an immediate temporary restraining order enjoining the Defendants from interfering with or closing Community's bingo operations on any pretext. If temporary restraining order is not granted, the Plaintiff will be caused to suffer immediate and irreparable injury, harm and/or damage. Additionally, Plaintiff has no other adequate remedy at law, the balance of harm favors the Plaintiff and Plaintiff is likely to prevail on the underlying issues and public interests favor the granting said relief.

    b.  to issue any other relief that the Court deems appropriate.

## COUNT TWO- REQUEST FOR PRELIMINARY INJUNCTION

42. That Community adopts, re-alleges, and incorporates by reference all contents of paragraphs 1-41 as if fully set forth herein.

43. **WHEREFORE,** Plaintiff respectfully requests this Court the following:

    a.  issue an immediate preliminary injunction enjoining the Defendants from interfering with or closing their charity bingo operations on any pretext. If

immediate and irreparable injury, harm and/or damage. Additionally, Plaintiff has no other adequate remedy at law, the balance of harm favors the Plaintiff, Plaintiff is likely to prevail on the underlying issues and public interests favor the granting of said relief.

    b.  to issue any other relief that the Court deems appropriate.

## COUNT THREE- REQUEST FOR DECLARATORY RELIEF AND PRELIMINARY INJUNCTION

44. That Community adopts, re-alleges, and incorporates by reference all contents of paragraphs 1-43 as if fully set forth herein.

45. **WHEREFORE**, Plaintiff respectfully requests this Court the following:

    a.  to enter a judgment declaring that Community is operating its charity bingo facility in accordance with the Bingo Ordinance and that the Bingo Ordinance is enforceable under the Amendment so that any attempt to interfere with or to cause the cessation of Community's charity bingo operations would violate federal law.

    b.  To enter a permanent injunction against the State of Alabama prohibiting them from interfering with Community's lawful charity bingo operations.

    c.  to issue any other relief that the Court deems appropriate.

Respectfully submitted this the 24th day of February, 2017.

## VERIFICATION

My name is Gloria Matthews and I am the member of Fairfield Community Clean Up Crew, Inc., the Plaintiff herein. I am duly authorized by the Plaintiff to make the following representation on behalf of the Plaintiff. Based on my personal knowledge of the matters contained herein, I hereby state for and on behalf of the Plaintiff that the factual allegations made in this Verified Complaint are true and correct. Further, Affiant saith not.

**Fairfield Community Clean Up Crew, Inc.**

By: _____

Its: member _____

**STATE OF ALABAMA** )

**COUNTY OF JEFFERSON** )

SWORN AND SUBSCRIBED TO BEFORE ME THIS 24 DAY OF FEBRUARY, 2017.

[SEAL]

_____
NOTARY PUBLIC

My commission expires: 11-15-2020

_____
SARA N. TOWER (TOW-018)
JAY E. STOVER (STO-055)
Attorney for the Plaintiff

**OF COUNSEL:**
**THE STOVER LAW FIRM, LLC**
1211 28TH St. South, Suite #206
Birmingham, AL 35205
Telephone: (205) 202-5563
Facsimile: (866) 853-6472

## CERTIFICATE OF SERVICE

I, Sara N. Tower, attorney for the Plaintiff, hereby certify that on the 24th day of February, 2017, a copy of the above and foregoing has been served upon all parties of record by proper service:

Sheriff Mike Hale
2200 Reverend Abraham Woods Jr. Boulevard
Birmingham, AL 35203


Honorable Steve Marshall
Attorney General
501 Washington Avenue
Montgomery, AL 36104

OF COUNSEL

# Exhibit A

## CITY OF FAIRFIELD, ALABAMA

### ORDINANCE NO. 1024G

WHEREAS, this Council finds that the City of Fairfield, Alabama is in need of economic stimulus for redevelopment, and

WHEREAS, this Council finds that there are charities, nonprofit organizations, and other public interest purposes that are not being properly funded, and

WHEREAS, this Council finds that the Constitution of Alabama 1901 as amended by Amendment 386 and Amendment 600 provided in part that "The operation of bingo games for prizes or money by non-profit organizations for charitable or educational purposes shall be legal in Jefferson County, subject to the provisions of any resolution or ordinance by the county governing body or the governing bodies of the respective cities and towns, within their respective jurisdictions", and

WHEREAS, this Council finds that, pursuant to *AmVets Huntsville Post No. 88 v. City of Huntsville,* 495 So. 2d 599, 600 (Ala. 1986), the governing body of Jefferson County, Alabama has no authority pursuant to the Bingo Amendment to regulate bingo games within the territorial limits of the City of Fairfield because this Council has already enacted an ordinance regulating bingo games; and

WHEREAS, this Council finds that, pursuant to *Chorba-Lee Scholarship Fund, Inc. c. Hale,* 2010 WL 3798326, at *8 (Ala. Sept 30, 2010), neither the Jefferson County Sheriff nor the Alabama Legislature has any authority pursuant to the Bingo Amendment to regulate bingo games; and

WHEREAS, this Council finds that, in light of the reasoning of *AmVets* and *Chorba-Lee Scholarship Fund,* it holds the exclusive authority to regulate the operation of bingo games within the territorial limits of the City of Fairfield; and

WHEREAS, this Council finds that, the Circuit Court of Jefferson County, Bessemer Division, has previously held that bingo may be played with the electronic assistance (*Dept. of AL. Veterans of Foreign Wars v. Arthur Green, Jr., et al,* CV 07 1240).

WHEREAS, this Council finds that the modern technological aids in the offering of bingo games through the use of equipment for the playing of electronically aided bingo, and

WHEREAS, this Council finds that the granting of a limited number of licenses by the Council for the operation of electronic charity bingo games will provide economic stimulus; and

WHEREAS, this Council finds that electronic charity bingo will increase the revenues of the City of Fairfield from its occupation and sales taxes, license fees and levies from these new commercial activities, and

1

WHEREAS, this City Council of the City of Fairfield, Alabama deems it appropriate to enact the following ordinance having repealed any prior Code Sections or ordinances as a result of certain constitutional issues and to avoid ambiguities and misinterpretations enacted by the City Council of the City of Fairfield, Alabama designed or intended to license or to regulate the playing of bingo within the City boundaries of the City of Fairfield, and add to the ordinances that comprise of the Code of the City the following sections as set forth as follows.

BE IT ORDAINED by the Council of the City of Fairfield, Alabama

## SECTION 1. SHORT TITLE.

This ordinance shall be known and may be cited as the "City of Fairfield Bingo Ordinance." and shall repeal and replace any prior ordinances enacted to permit and regulate the playing of bingo within the City boundaries of the City of Fairfield, Alabama including but not limited to ordinance numbers 1024, 1024A, 1024B, 1024C, 1024D, 1024E and 1024F

## SECTION 2. DEFINITIONS.

As used herein the following words shall have the following meanings as described here, unless the context clearly indicates otherwise:

A. "Bingo" or "Bingo Games" shall mean any game of chance known as bingo, including any game permitted by Federal law or which the National Indian Gaming Commission has classified, in a letter opinion, as a Class II bingo game (whether or not electronic, computer, or other technologic aids are used in connection therewith), which incorporate the following elements: (i) the game must be played on a grid of five (5) horizontal rows intersecting by five (5) continuous squares contained within the grid; (ii) each square in a grid must be designed by a number or other symbol contained in a collection of numbers or symbols used for playing the game; (iii) numbers or symbols are selected by a procedure or mechanism entirely or predominantly governed by chance, and as such number or symbols, if they present on one or more of the squares on any grid in play, are covered or otherwise marked on such grid; (iv) the winner or winners of a particular game are the players of those grids for which a previously designated pattern or arrangement is first covered or marked; (v) two or more players must compete against one or another for prizes; (vi) monetary wagers may be collected for the players of bingo for the opportunity to participate in the game, and such wagers may vary in amount to reflect the value of the prize of winning a particular game, whether the wager is for participation in the whole game or a particular phase thereof, and other factors reflecting the interplay of the amount wagered, the size of the prize and the probability of winning; and (vii) the prizes for winning the game of bingo can be money or anything of value. To the extent that the foregoing elements are present in the game of bingo, it can be played with different kinds of equipment varying from one end of the spectrum, where traditional cards displaying the playing grids are used with tokens to cover the designated square on the grids, to the technologically advanced end of the spectrum, whether electronic devices perform the operation of the game using computers or micro processors and interact with the human players by means of an electronic console. If the game of bingo is played on electronic devices which determine and signal the winner, such devices, shall be electronically linked to ensure that multiple players are competing against each

2

other. The prizes or evidence thereof for winning bingo games may be disbursed by the electronic devices or consoles used in playing such games at the time each game is won or on different schedules that reflect a record of wins and losses involving multiple games. The entertaining capabilities of electronic devices and consoles used in playing bingo may be enhanced by spinning reels or other video or mechanical displays, but such displays and the apparatus used to perform them may not affect the play or outcome of the game. In the event that any controversy concerning whether or not a certain activity, or type of activity, constitutes the game of "bingo" as herein defined, and for which a license may be issued, the decision of the City of Fairfield Chief of Police shall control and be final. Notwithstanding any provision to the contrary herein, the definition of "Bingo" or "Bingo Games" shall include the legal description established by the Alabama Supreme Court in *Barber v. Cornerstone Community Outreach, Inc.*, which provides as follow:

1.    "Each player uses one or more cards with spaces arranged in five columns and five rows, with an alphanumeric or similar designation assigned to each space.

2.    Alphanumeric or similar designations are randomly drawn and announced one by one.

3.    In order to play, each player must pay attention to the values announced; if one of the values matches a value on the player's card, the player must physically act by marketing his or her card accordingly.

4.    A player can fail to pay proper attention or to properly mark his or her card, and thereby miss an opportunity to be declared a winner.

5.    A player must recognize that this or her card has a "bingo," i.e., a predetermined pattern of matching values, and in turn announce to the other players and the announcer that this is the case before any other player does so.

6.    The game of bingo contemplates a group activity in which multiple players compete against each other to be the first to properly mark a card with the predetermined winning pattern and announce that fact."

*Barber v. Cornerstone Community Outreach, Inc.*, 42 So. 3d 65, 86 (Ala 2009).

Additionally, "Bingo" and "Bingo Games" shall be defined as said definition may be subsequently amended by the Alabama Supreme Court and/or pursuant to an Amendment to the Constitution of the State of Alabama which applies to the City of Fairfield. Further, the License holder shall provide the City of Fairfield with a certification from a nationally recognized gaming testing laboratory that all games at the location comply with the standard set forth above.

B. "Bingo Equipment and Supplies" shall mean any electronic or mechanical equipment, machine or device, or computer or other technological hardware or device, (i) which is installed, or is to be installed, at a bingo facility and (ii) which is used, to play bingo as herein defined. Bingo Equipment and Supplies include any machine, device or hardware that assists a player or

3

the playing of bingo games, broadens the participation levels in a common game and includes all of the ancillary bingo supplies. Examples of Bingo Equipment and Supplies include but are not limited to, readers, electronic player stations, player terminals, central computer servers containing random number generators and other processing capabilities for remote player terminals, electronic consoles capable of providing game results in different display modes, telephones and telephone circuits, televisions, cables, and other telecommunication circuits, and satellites and related transmitting and receiving equipment. Bingo Equipment shall not be a "gambling device" or "slot machine" within the meaning of the Code of Alabama 1975, Sections 13A-12-20(5) and (10) or other provision of law, whether now in effect or hereafter enacted.

C. "Bingo Expenses" shall mean all expenses incurred in connection with the holding, operating and conducting of Bingo Games in accordance with Amendment 386, as Amended by Amendment 600 to the Constitution of Alabama 1901, including but not limited to, the following expenses; rental of Bingo Equipment and Supplies, payment for the maintenance and repair of Bingo Equipment and Supplies, payment of prizes, rental for the Location, utilities, janitorial services, security services, banking services, permit fees, taxes and license fees, insurance premiums, professional services, maintenance and any payments required by this ordinance. Any expenses authorized by Alabama Constitutional Amendment 386, amended by Alabama Constitutional Amendment 600.

D. "Bingo Facility" shall mean a facility in which bingo games are operated by a nonprofit organization as provided in this Ordinance.

E. "Bingo Sessions" shall mean a consecutive period of time up to twenty-four consecutive hours during which bingo is played on as many as seven (7) days in a given week.

F. "Chief of Police" shall mean the Chief of Police for the City of Fairfield, Alabama, who is charged with certain duties concerning investigation, regulation, and enforcement of the requirements of this Ordinance as set forth therein.

G. "Class A Bingo License: shall mean a license issued to an applicant who desires to operate only paper card Bingo at a Class A qualified location.

H. "Class B Bingo License" shall mean a license issued to an applicant who desires to operate any and all games of Bingo at a Class B Qualified Location.

I. "Class A Qualified Location" for the holder of a Bingo License shall mean a Location which has been inspected and approved by the Chief of Police for the conduct of Bingo Games.

J. "Class B Qualified Location" for the holder of a Bingo License shall mean a Location which has been inspected and approved by the Chief of Police for the conduct of Bingo Games and other lawful activities and for which the holder of a Bingo License or Operator has submitted satisfactory evidence that the location has in place at all times any Bingo Games are being conducted or operated the following:    (i) Locations to be approved shall be limited to the following locations:  Aronov Drive between Valley Road, including the property located on the corner of Aronov Drive and Valley Road, and Martin Luther King, Jr. Drive; Commerce Avenue

4

between Crawford Street and 41st Street; E.J. Oliver Boulevard between Kelco Place and Belview Drive and Donald Parkway between Avenue F and Court O in the City of Fairfield; (ii) liability insurance in an amount not less than $1,000,000; (iii) adequate square footage of floor space available to the general public for use to comply with all building and fire codes; (iv) any location on Aronov Drive and E.J. Oliver shall require a minimum of 500 individual electronic player stations; any location on Kelco Place shall require a minimum of 300 individual electronic player stations; and any location on Commerce Avenue and/or Donald Parkway shall require a minimum of 200 individual electronic player station; (v) locations on Aronov Drive shall not be within 500 feet of any other Bingo location operation; (vi) adequate parking for patrons and employees; (vii) onsite security as reasonably prescribed by the Chief of Police; (viii) onsite first aid personnel as reasonably prescribed by the Fire Chief; (ix) such accounting procedures, controls and security monitoring as are reasonably necessary to preserve and promote the integrity of the operation of Bingo Games and the protection of the Nonprofit Organization and the patrons of the Bingo Games; and (x) satisfactory evidence that the Location is fully compliant with the Americans with Disabilities Act. In addition to the foregoing, in order for a location to qualify as a Class B Qualified Location, the City Council shall first have made a specific finding that said location and the overall development to be situated thereon, aids, is beneficial to or otherwise assists the City of Fairfield in its efforts to promote industry and economic development. Notwithstanding any provision to the contrary, no bingo operation may operate in any location within a R1, R2, R3, or R4 zoning area and the number of locations licensed for Bingo Class B operations shall not exceed seven (7) locations. In the event the minimum required number of machines are not available prior to the opening of any location as required herein, the license applicant shall pay all monthly fees required for the minimum number of machines as required herein. Further, any license holder shall have in place the minimum required machines within thirty (30) days of opening.

K. "License Holder" shall mean any holder of a Class A Bingo License or Class B Bingo License.

L. "Location" shall mean a building, hall, enclosure, room, premises, grounds and/or outdoor area that complies with all federal, state and local laws and applicable building and fire codes.

M. "Net Proceeds from Bingo" shall mean gross receipts from holding, operating and conducting of Bingo Games in accordance with Amendment 386, Amended by Amendment 600, of the Constitution of Alabama 1901 less winnings and/ or prizes awarded less Bingo Expenses.

N. "Nonprofit Organization" shall mean any bona fide charitable, education, religious, fraternal, civic or service organization or other entity based in Alabama which has been classified by the Internal Revenue Service as a tax-exempt organization and which operates without profit to its members.

O. "Person" shall mean any human being, corporation, partnership, business organization, association or legal entity of any kind whatsoever.

5

P. "Revenue Director" shall mean the Administrative Clerk of Fairfield, Alabama, who is charged with certain duties concerning the issuance of licenses and revocation of prescribed by this ordinance.

## SECTION 3. OPERATION OF BINGO GAMES

The operation of Bingo Games for prizes or money by Nonprofit Organizations shall be allowed in the City of Fairfield, provided that the Nonprofit Organization shall first obtain a Bingo License, and shall thereafter conduct Bingo Games and pay Bingo Expenses in accordance with this Bingo Ordinance and Amendment 386, as Amended by Amendment 600 to the Constitution of Alabama 1901.

## SECTION 4. BINGO LICENSE REQUIRED

A. No Nonprofit Organization shall be allowed to operate a Bingo Game unless the Revenue Director issues a license to said Nonprofit Organization authorizing it to do so. The license described herein shall be in a form designated by the City Council of the City of Fairfield.

B. A holder of a Bingo License may hold only one license, and that license shall be valid for only one Location in the City of Fairfield, Alabama. A license is not assignable or transferable and shall become inactive upon the dissolution of the License Holder and shall become void thirty (30) days after the dissolution of the License Holder.

## SECTION 5. APPLICATION FOR LICENSE; SUBMISSION; FORM CONTENTS.

A. Any Nonprofit Organization desiring to obtain a license to operate Bingo Games hereunder shall make application to the Revenue Director and shall pay a nonrefundable application fee of $5,000.00 for a Class A Bingo License and $10,000.00 for a Class B Bingo License. Such License shall be valid for a period of one (1) calendar year or the remainder of the calendar year in which the license is obtained.

i. The License shall terminate at the end of the calendar year unless the License Holder, within thirty (30) days prior to the end of the calendar year files a prescribed form providing any changes to the required information given in the original application or in the prior update to the information as applicable and pays a nonrefundable clerical and investigative fee of $5,000.00 for a Class A Bingo License and $10,000.00 for a Class B Bingo License.

B. No Bingo License shall be issued to any applicant qualified hereunder unless and until the applicant fully provides the information required hereunder, such being provided in a form and in sufficient detail to satisfy the Chief of Police, Fire Chief, Building Department and/or the City Council of the City of Fairfield of its validity and sufficiency. The Chief of Police and the City Council of the City of Fairfield may require any reasonable confirming documentation as to any information required hereunder and shall have reasonable time to check and confirm by any available method the accuracy or validity of any information provided hereunder.

6

(i) Any yearly update under Section 5 (A) shall fully provide the information required hereunder, such being provided in a form and in sufficient detail to satisfy the Chief of Police, Fire Chief, Building Department and/or the City Council of the City of Fairfield of its validity and sufficiency. The Chief of Police and the City Council of the City of Fairfield may require any reasonable confirming documentation as to any information required hereunder and shall have reasonable time to check and confirm by any available method the accuracy or validity of any information provided hereunder.

(ii) Should the Chief of Police decide that the initial license would not have been granted had all changes in the required information since the original application occurred prior to the issuance of the License, the Chief of Police may revoke the License. Should the Chief of Police revoke the any License under this sub provision, the procedures in Section 15 of this Ordinance shall apply.

C. No such licenses shall be issued until such time as the Building Department has determined that all Building Code Regulations have been complied with and that all zoning regulations have been satisfied.

D. Should said application be incomplete or contain material inaccuracies, same shall be grounds for denial of the license. In addition, the Police Department shall investigate as to the possible criminal record of the applicant. Should it be determined that any of the Representatives of the non-profit organization involved in bingo operations and/or directors of the non-profit organization have, within two (2) years prior to the date of application, been convicted of any felony and/or misdemeanor involving moral turpitude, the application may be denied.

E. Each application for a Bingo License or renewal thereof shall be on such form as is prescribed or approved by the City Council of the City of Fairfield, and shall, at a minimum, contain the following information and exhibits:

(i) The date of the incorporation or other evidence of inception showing existence by the Nonprofit Organization for at least twenty four (24) months immediately prior to the issuance of the license.

(ii) A certified copy of the charter, certificate of incorporation, by-laws, or other evidence of legal existence of the Nonprofit Organization or Operator.

(iii) Where applicable, a copy of the letter ruling or tax-exempt determination letter from the Internal Revenue Service, or other proof deemed acceptable by the Chief of Police verifying the tax-exempt status of the Nonprofit Organization named in the application of the parent organization of which the same is a qualified branch, chapter, lodge or post.

(iv) The names and residence addresses of each of the members, officers, directors, or the other authorized representatives of the Nonprofit Organization who are responsible for the operation of Bingo Games by the Nonprofit Organization.

(v) The exact physical Location at which the applicant will conduct the Bingo

7

Games and proof that such Location is either owned or leased by the Nonprofit Organization which is conducting Bingo Games. If such Location is not owned by such Nonprofit Organization, the application shall include the names and addresses of the owners or owners of the leasehold interest thereof and a copy of all agreements with the said owners and/or owners of the leasehold interest thereof regarding the rental or use of the premises for the operation of Bingo Games.

(vi) The application shall also be accompanied by a drawing showing the floor plan of the proposed business and all exits. Applications for Class B Licenses shall also show the proposed location of each individual electronic player station or device, and its floor space requirement as required under the Building Code of the City of Fairfield.

(vii) A statement listing all convictions, if any, for criminal offenses, other than traffic offenses, of each of the Persons identified pursuant to subsection (iv) and (v) above.

(viii) A statement that the Persons identified pursuant to subsections (iv) and (v) above are persons of good moral character.

(ix) Such additional information as is reasonably required by the Chief of Police and/or City Council of the City of Fairfield to ensure compliance with this Ordinance and other applicable City, County, State and Federal ordinances, laws and regulations.

F. Each applicant for a Class B License or renewal thereof shall be on such form as is prescribed or approved by the City Council of the City of Fairfield, and shall, at a minimum, contain the following information and exhibits:

(i) The number and type of individual electronic player stations or devices intended to be operated;

(ii) The owner, description, model and serial number of each individual electronic player stations or device, and

G.    Each applicant shall provide sufficient evidence as determined by the Fairfield City Council that the applying non-profit organization is established in a manner to allow it to adequate and solely operate the bingo games incompliance with the constitutional amendment and this ordinance, including but not limited to: a managing representative shall be present during all hours of operations; all bingo proceeds to be deposited into a separate bank account under the exclusive control of the non-profit. The trade name of the operation shall make reference to the non-profit organization (i.e. Fairfield Bingo for the benefit of non-profit organization), business plan by the non-profit establishing the intended use of the proceeds arising from the operation of bingo games. Notwithstanding any provisions to the contrary, in the event the non-profit applicant is granted a bingo license and there is failure by the non-profit to maintain the standards set forth above, the Fairfield City Council, in its sole discretion, may terminate said license upon written notice to said non-complying license holder.

**SECTION 6. ISSUANCE OF LICENSE**

8

A. Upon receipt of a fully completed and documented application for a license meeting all the requirements set out herein, the Chief of Police shall make such investigation as he may deem necessary and proper of the qualifications of each applicant as required herein and the truth and veracity of the information contained or attached to the application. After making such investigation and after being satisfied that all qualifications and requirements as set out herein have been fulfilled, the Chief of Police shall make recommendations to the City Council of the City of Fairfield as to whether the requested license shall be issued. As part of said investigation, any Person named in paragraphs (iv) and (v) of Section 5(f) herein may be required to furnish a consent for background and criminal history check.

B. The Revenue Director shall issue such license to said applicant upon the terms and conditions herein set forth.

C. A Class A Bingo License shall be issued to an applicant who desires to operate paper card Bingo only at Qualified Location.

D. A Class B Bingo License shall be issued to an applicant who desires to operate any and all games of Bingo only at a Qualified Location.

E. The Revenue Director shall issue a sticker or decal for each individual electronic player station or device located at the location of a Class B Bingo licensee annually at the time of the issuance of the Bingo License. A fee of $100.00 be charged for each sticker/decal annually. Any sticker or decal may be transferred by the Chief of Police to another electronic player station or device which replaces an electronic player station or device for which the sticker or decal was previously issued; a $100.00 administrative fee shall be paid for each such transfer. Any License found in violation of this requirement shall be guilty of a misdemeanor and subject to fines up to $500.00 and imprisonment of up to 180 days. Each play station without a sticker/decal shall be separate violation. Any License Holder found in violation one (1) or more times within a one year license period, in addition to the penalties above, must appear before the City Council to consider license revocation.

## SECTION 7. AMENDMENTS.

A. An applicant may amend an application filed hereunder to correct or complete the information contained therein or to change said information to comply with a change in circumstances at any time prior to the denial thereof by the City Council of the City of Fairfield or the issuance of a license thereon, provided that said amendment is made in or on a form satisfactory to the City Council of the City of Fairfield and the applicant pays a substitution of amendment fee of $1,000.00 per amendment.

B. A license, once issued, may be amended only upon resubmission of a new, completed application satisfactory to the City Council of the City of Fairfield and payment of a new application fee by the License Holder. The City Council of the City of Fairfield may deny amendments only for the reason that the proposed amendment would have prevented the issuance of the original license had the amendment been included in the original application at

9

the time the original license was issued. If such amendment is approved, a new license evidencing the amendment will be issued in place of the license being amended.

## SECTION 8. CONTENTS AND DISPLAY OF LICENSES.

A. Each Bingo License shall contain the name and address of the License Holder, the Location at which the License Holder is permitted to conduct Bingo Games, the days of the week on which the License Holder is permitted to conduct Bingo Games, and the date on which the license was issued and upon which it expires.

B. The License Holder shall display the license conspicuously at the Location where Bingo is being conducted at all times during the conduct of a Bingo Game.

## SECTION 9. FEE PROCEDURES.

All monies shall be paid to the City of Fairfield and shall be deposited into a separate Bingo account, not to be comingled with the General Fund. Further no expenditures shall be paid for said Bingo account without the approval of the City Council of the City of Fairfield, Alabama. To the extent allowed by law, in the public interest, the said account shall be subject to audit by the State of Alabama Examiners of Public Accounts.

(a) The City Clerk as authorized by this ordinance shall have the power to make regulations respecting the reporting, collection, and enforcement of the fees levied pursuant to this ordinance. The levy, collection and enforcement of the fee shall be administered by the City, or other legal entity as established by ordinance of the City of Fairfield.

(b) For electronic bingo, any licensed non-profit organization shall pay to the City of Fairfield fees in the amount of $100.00 per month per bingo terminal on the first business day of each month beginning on the first day of operation of such terminal. Beginning on January 1, 2012 any licensed non-profit organization shall pay to the City of Fairfield fees in the amount of $150.00 per bingo terminal monthly. Any fees not paid by the 5th day of a given month shall be subject to a twenty percent (20%) penalty. In the event all fees and penalties are not paid by the 10th day of any given month, same shall be sufficient basis to revoke operations permit. Said operations permit which shall automatically be revoked if all fees, including penalty, are not paid by the 10th day of the month. Notwithstanding any provision to the contrary there shall be no pro-ration and/or suspension of said monthly fee regardless of the number of days of operation during a given month.

(c) In addition to any other fee paid under this ordinance, each permit holder shall pay to the City 2 % of its gross bingo revenues less any amount paid in winnings on a monthly basis. Each permit holder shall provide to the City an accounting of its bingo revenues and winning payouts no later than the 5th day for the preceeding month with payment of applicable fees. Failure to remit said accounting and payment by the 10th day of a given month shall be subject to a twenty percent (20%) penalty. In the event all fees and penalties are not paid by the 10th day of any given month, said operation permit shall be automatically revoked.

10

## SECTION 10. CHARITABLE OR EDUCATIONAL PROCEEDS.

All Net Proceeds of Bingo shall be designated and expended for charitable or educational purposes.

## SECTION 11. GENERAL REGULATIONS AND PRIZES.

No person under the age of 19 shall be permitted to play any game or games of bingo, nor shall any person under the age of 19 be permitted to conduct or assist in the conduct of any game of bingo;

(a) No bingo licenses shall be issued to any nonprofit organization, unless such organization shall have been in existence for at least 24 months immediately prior to the issuance of the license;

(b) Bingo games shall be operated only on the premises owning or leased by the nonprofit organization operating the bingo game. If the premises is leased the rate of rental shall not be based on a percentage of receipts or profits resulting for the operation of bingo games;

(c) No nonprofit organization shall enter into any contract with any individual, firm, association or corporation to have said individual or entity operate bingo games or concessions on behalf of the nonprofit organization, nor shall said nonprofit organization pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game, but this provision shall be interpreted to allow any items and matters allowed by Alabama Constitutional Amendment 386.

(d) A nonprofit organization shall not lend its name to allow its identity to be used by any other person or entity in the operation or advertising of a bingo game in which said nonprofit organization is not directly and solely operating said bingo game;

(e) Prizes given by any nonprofit organization for the playing of bingo games in The City of Fairfield, Alabama shall be unlimited but, in no event, shall any prize exceed the amount displayed on any machine prior to the playing of any game and no prize shall be paid for a game in which there is a machine malfunction;

(f) No person or organization, by whatever name or composition thereof, shall take any salary, expense money, or fees as remuneration for services rendered in the operation of any bingo game. (Amendment 386; Proposed by Act 80-431, submitted at the Sept. 2, 1980, election, and proclaimed ratified Sept. 17, 1980, Proclamation Register No. 3, p. 180; as amended by Amendment 600; Proposed by Act 96-420, submitted at the November 5, 1996 election, and proclaimed ratified Dec. 5, 1996, Proclamation Register No. 8, p. 220), but this provision shall be interpreted to allow any items and matters allowed by Alabama Constitutional Amendment 386, amended by Alabama Constitutional Amendment 600 .

(g) The Revenue Director shall not issue a Bingo License until the City of Fairfield Planning and Zoning Commission has made a determination in compliance with the

11

requirements of the City of Fairfield Zoning Ordinance that the use is compatible with the permitted district use and is consistent with the provisions of the Zoning Ordinance of the City of Fairfield, Alabama as amended from time to time.

(h) Any payments, expenses, contracts and/or agreements allowed or implied to be allowed by Alabama Constitutional Amendment 386, amended by Alabama Constitutional Amendment 600, and Alabama Attorney General Opinion 2008-135 shall be allowed by this ordinance.

## SECTION 12. RECORDS AND ACCOUNTING.

Each holder of a Bingo License shall keep and maintain the following records and accounts pertaining to each Bingo Session conducted by it for at least 3 years from the date of such session:

(a) An itemized list of all gross receipts for each Bingo Session, which shall include all receipts derived from the sale of Bingo cards, entrance fees, donations, or for any other source whatsoever pertaining to the operation of such session.

(b) An itemized List of all Bingo Expenses, costs and disbursements, other than prizes paid or given as a result of the operation of any Bingo Session, together with the name and address of each person to whom said Bingo Expenses, disbursements or consideration was paid or given, a receipt invoice for all items purchased and for all services rendered; and such other records as will adequately reflect the amount and nature of such expenses, costs and disbursements.

(c) All records, receipts, accounts and or lists required to be kept and maintained hereunder shall be open to inspection by the City Clerk or a designee of the City Council of the City of Fairfield during reasonable business hours. All locations at which Bingo Games are being held by a License Holder, or at which a License Holder intends to conduct Bingo Games, shall be open to the Chief of Police during all times at which Bingo Games are being conducted and during all other reasonable business hours.

## SECTION 13. ENFORCEMENT AND SUPERVISION; RULES.

The City Clerk and/or that individual designated to perform the duties of the City Clerk, shall be charged with the duty to and shall enforce and supervise the administration and enforcement of all of the rules, regulations, and reporting required hereunder. In addition thereto, the Chief of Police shall enforce all applicable criminal and civil laws of the State of Alabama and the City of Fairfield, Alabama to prevent and discourage any illegal activity.

## SECTION 14. REVOCATION OF LICENSE; APPEAL.

The Chief of Police, for good cause shown, may revoke any license issued pursuant hereto if the License Holder violates any of the material provisions herein promulgated, provided, however, that no license may be revoked without complying with the following

12

procedures: The Chief of Police, or his or her representative must first deliver to any Person named in the license application pursuant to Section 5, subsections (c)(iv) and (c)(v) hereunder thirty (30) days written notice of its intention to revoke said license and the grounds therefore in specific detail to allow the License Holder to cure any alleged violations. In curing any alleged violation, the Chief of Police may require the License Holder to post bond for an amount which will ensue that additional violation will not occur. If the License Holder cures any alleged violation within the ninety-day notice period, no revocation shall be effective. In the event the Chief of Police does not in good faith, consider the violation cured within the thirty-day notice period, he shall give additional notice to the License Holder, in the manner set forth above, that it intends to proceed with revocation to the Fairfield City Council within ten (10) days of receipt of such notice. Upon such timely request for hearing, the City Council shall hold a hearing upon such revocation, subject to the rules and regulations for the conduct of meetings and hearing before such City Council, at its next regularly scheduled meeting, or specially called meeting for the purpose of such hearing. License Holder must be given 72 hours advanced notice of hearing. Upon such hearing the rendering of a decision adverse to the License Holder shall result in the immediate revocation of the subject license. Notwithstanding any provision contained herein, operations permit shall automatically be revoked under paragraph 9(b) & 9(c) as a result of failure to pay fees and no further notice shall be required and/or cure provisions shall apply.

## SECTION 15. EFFECT OF REVOCATION.

A license Holder whose license is revoked as herein set out shall return such license to the Chief of Police on or before the effective date of such revocation and whether returned or not such license shall be inactive on the effective date and shall become void thirty (30) days after the effective date of revocation unless another Nonprofit Organization files in writing with the Revenue Officer an application to substitute it as the license holder at the same Location and Bingo Facility along with an application fee equivalent to that required in Section 5.A.  The application for substitution shall contain all information concerning the applicant as is required in an application for a new permit and shall contain proof that the new Nonprofit Organization has a valid right to use the location and Bingo Facilities. The application shall be granted unless the original application for the permit would have been denied had the new Nonprofit Organization, as it exists on the date of the application to substitute, been disqualified from obtaining a Bingo License at the time the original license was issued. A License Holder who loses the right to use a license in consequence of a violation of any rule or regulation promulgated herein shall be ineligible to apply for or have issued to it another license hereunder for a period of 24 months after the effective date of such revocation. Nor shall any license be issued to any Person which is directed or controlled by Persons listed in the application for license filed pursuant to Section 5, subsection (c)(lv) hereof, in regard to the revoked license or to any organization which the membership is substantially the same as any organization whose license has been revoked hereunder, for a period of 24 months after the effective date of such revocation.

## SECTION 16. VIOLATION, OFFENSE.

Any Person, association, corporation, or organization who or which shall violate any of the provisions of this Ordinance or of the Constitution of the State of Alabama relating to the

13

conduct of Bingo in the City of Fairfield or any terms of any license issued under this Ordinance, shall be guilty of a misdemeanor and upon conviction shall be subject to any or all of the following:

(i) Be fined not more than five hundred dollars ($500.00);

(ii) Forfeiture of any license issued under this Ordinance;

(iii) Be ineligible to serve as an officer of a licensee or to participate in conducting Bingo for a period of 2 years.

## SECTION 17. VOLUNTARY SUSPENSION OF LICENSE.

In the event the electronic bingo operations are prevented from operating due to a ruling of a court of competent jurisdiction and/or immediate threat of raiding by law enforcement, any licensed non-profit organization which is in good standing with the requirements of this ordinance, including but not limited to the payments of all fees, may surrender said license without further payment or penalty. Upon any changes which would allow said operations to reopen, said formerly licensed non-profit may be re-licensed upon the payment of a renewal fee of $5000.00 for the remaining months of that license period, and a certification that said non-profit remains in compliance with this ordinance.

## SECTION 18. SEVERABILITY.

The provisions hereto are severable. If any part hereof shall be declared invalid or unconstitutional, such declaration shall not affect any parts hereof which shall remain. To the extent possible the contents of all provisions and sub-provisions in this ordinance are severable and, to the extent possible, if any part of the content of any provision or sub-provision shall be declared invalid or unconstitutional, such declaration shall not affect any parts thereof which shall remain.

## SECTION 19. PRIOR ORDINANCES REPEALED.

The City Council of the City of Fairfield does hereby with the adoption of this Ordinance repeal and supersede any pervious ordinances in reference to Bingo.

## SECTION 20. COMPLIANCE WITH CONSTITUTIONAL AMENDMENT 386 AMENDED BY CONSTITUTIONAL AMENDMENT 600

In the event the any term or provision of this ordinance shall conflict with the provisions of the controlling Constitutional Amendments 386 and 600, said conflicting term or provision shall be modified or amended so as to insure that this ordinance shall comply with said Constitutional Amendments.

14

Issued this the 14th day of April , 2011.

_____          _____
President, Fairfield City Council                Mayor City of Fairfield

15

# Exhibit B

**AMENDMENT 386 RATIFIED**

## Operation of Bingo Games By Nonprofit Organizations in Jefferson County.

The operation of bingo games for prizes or money by nonprofit organizations for charitable or educational purposes shall be legal in Jefferson county, subject to the provisions of any resolution or ordinance by the county governing body or the governing bodies of the respective cities and towns, within their respective jurisdictions. The said governing bodies shall have the authority to promulgate rules and regulations for the licensing and operation of bingo games, within their respective jurisdictions, provided, however, that said governing bodies must insure compliance with the following provisions:

(a) No person under the age of 19 shall be permitted to play any game or games of bingo, nor shall any person under the age of 19 be permitted to conduct or assist in the conduct of any game of bingo;

(b) No bingo license shall be issued to any nonprofit organization, unless such organization shall have been in existence for at least 24 months immediately prior to the issuance of the license;

(c) Bingo games shall be operated only on the premises owned or leased by the nonprofit organization operating the bingo game. If the premises is leased, the rate of rental shall not be based on a percentage of receipts or profits resulting from the operation of bingo games;

(d) No nonprofit organization shall enter into any contract with any individual, firm, association or corporation to have said individual or entity operate bingo games or concessions on behalf of the nonprofit organization, nor shall said nonprofit organization pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game;

(e) A nonprofit organization shall not lend its name or allow its identity to be used by any other person or entity in the operating or advertising of a bingo game in which said nonprofit organization is not directly and solely operating said bingo game;

(f) Prizes given by any nonprofit organization for the playing of bingo games shall not exceed $1,200.00 in cash or gifts of equivalent value during any bingo session or $2,400.00 in cash or gifts of equivalent value during any calendar week;

(g) No person or organization, by whatever name or composition thereof, shall take any salary, expense money, or fees as remuneration for services rendered in the operation of any bingo game.

## AMENDMENT 600 RATIFIED

**Amendment of Amendment No. 386.**

Amendment To Subsection (f) of Amendment No. 386

"(f) Prizes given by any nonprofit organization for the playing of bingo games in Jefferson County shall not exceed the amounts set by local law;"