## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

FAIRFIELD COMMUNITY )
CLEAN UP CREW, INC., )
      Plaintiff, )
  )
vs. )
  )
MIKE HALE, in his official )
capacity as Jefferson County )
Sheriff, et al., )
      Defendants. )
  )

2:17-cv-00308-LSC

### MEMORANDUM OF OPINION

Before the Court is Sheriff Mike Hale ("Sheriff Hale") and Attorney General Steve Marshall ("Attorney General Marshall") (collectively "Defendants")'s Motion to Dismiss the Amended Complaint or, in the Alternative, Motion for Summary Judgment. (Doc. 19.) For the reasons explained herein, Defendants' motion is due to be GRANTED in PART and DENIED in PART.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Fairfield Community Clean-Up Crew, Inc. ("Community") is an Alabama non-profit corporation and charitable organization organized under the

Fairfield Municipal Bingo Ordinance No. 1024G. (Doc. 18 ¶ 2.) Sheriff Hale is the Sheriff of Jefferson County and Attorney General Marshall is the Attorney General for the State of Alabama. (Doc. 18 ¶ 12; Doc. 19 ¶ 1.) Defendants informed Community that it was in violation of Alabama law because of its operation of illegal gambling devices and slot machines and ordered Community to cease its bingo operations. (Doc. 18 ¶ 19.) On February 24, 2017, Defendants executed a search warrant on Community's bingo facility and seized Community's property from that location. (Doc. 18 ¶ 18.) Later that same day, Community instituted this action against Defendants. (Doc. 1; Doc. 19 ¶ 14, Ex. 2.)

## A. Alabama Constitutional Amendments and Fairfield's Ordinances Pertaining to Community's Claims

Article IV, § 65 of the Alabama Constitution generally prohibits lotteries, including bingo, in the State of Alabama. *See Barber v. Cornerstone Cmty. Outreach, Inc.*, 42 So. 3d 65, 78-79 (Ala. 2009). Section 65 provides:

> The legislature shall have no power to authorize lotteries or gift enterprises for any purposes, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery; and all acts, or parts of acts heretofore passed by the legislature of this state, authorizing a lottery or lotteries, and all acts amendatory thereof, or supplemental thereto, are hereby avoided.

Ala. Const. of 1901, art. IV, § 65. Amendments to the Alabama Constitution of 1901 allow bingo in certain counties by creating exceptions to the general

prohibition of "lotteries" in § 65. One such amendment, Amendment 386, allows bingo in Jefferson County. *See Chorba-Lee Scholarship Fund, Inc. v. Hale*, 60 So. 3d 279, 280 (Ala. 2010). Amendment 386, as amended by Amendment 600, states:

> The operation of bingo games for prizes or money by nonprofit organizations for charitable or educational purposes shall be legal in Jefferson County, subject to the provisions of any resolution or ordinance by the county governing body or the governing bodies of the respective cities and towns, within their respective jurisdictions. The said governing bodies shall have the authority to promulgate rules and regulations for the licensing and operation of bingo games, within their respective jurisdictions . . .

ALA. CONST. OF 1901 amends. 386, 600.

Pursuant to Amendments 386 and 600, the City of Fairfield enacted the City of Fairfield Bingo Ordinance (the "Bingo Ordinance") establishing rules and licensing procedures for the operation of bingo within the city. (*See* Doc. 18 Ex. A.) The Bingo Ordinance defines "bingo" and "bingo games" and specifically refers to the use of electronic devices to play bingo:

> To the extent that the foregoing elements are present in the game of bingo, it can be played with different kinds of equipment varying from one end of the spectrum, where traditional cards displaying the playing grids are used with tokens to cover the designated square on the grids, to the technologically advanced end of the spectrum, whether electronic devices perform the operation of the game using computers or micro processors and interact with the human players by means of an electronic console.

FAIRFIELD, ALA., Ordinance No 1024G, § 2 (2011).

## B. Community's Electronic Bingo Operations

Community obtained a license from the City of Fairfield and opened a "bingo" establishment that included the use of electronic bingo. (Doc. 18 ¶¶ 2, 15.) Community has maintained that the operation of the bingo establishment, including electronic bingo, was legal under its interpretation of the above-quoted constitutional amendments and the Bingo Ordinance. (Doc. 18 ¶ 15.)

On February 23, 2017, a Jefferson County District Court Judge issued a search warrant for the facility where Community conducted its bingo operations. (Doc. 18 ¶ 17.) The warrant further commanded the seizure of (1) any U.S. currency or (2) evidence of violation of Alabama Constitutional Amendments 386 and 600 and Ala. Code § 13a-12-20 *et seq.* relating to illegal gambling. (Doc. 18 ¶ 17; Doc. 19 Ex. 1.) The following day, February 24, 2017, the Jefferson County Sheriff's Office executed a search warrant on the bingo facility and seized Community's electronic bingo machines as well as other property. (Doc. 19 Ex. 2.) Also on February 24, 2017, but later in the day, Community filed this action. (*Compare* Doc. 1 at 1 (filing time of 3:12 PM) *with* Doc. 19 Ex. 2 (Search Warrant Worksheet listing "time entered" at 8:30 AM).) While Community requested a Temporary Restraining Order ("TRO") on February 24, 2017, the parties agreed

the motion was moot when filed given the execution of the search warrant earlier that day. (*See* Doc. 6.)

Following the seizure of Community's bingo equipment, the District Attorney for Jefferson County filed a civil petition styled *State of Alabama* ex rel. *Washington v. Harris*, CV-2017-900185, on March 6, 2017 in the Circuit Court of Jefferson County. The district attorney sought the condemnation and forfeiture of the alleged illegal gambling devices that were seized pursuant to the February 24, 2017 search of Community's bingo facility. (Doc. 19 Ex. 3.) The petition specifically asked the court to find that the devices seized during execution of the warrant were in violation of Alabama law. (*Id.*) At the time of this Memorandum of Opinion, the state-court civil forfeiture action is still pending.

## II.    STANDARD OF REVIEW

Defendants raise sovereign immunity and ripeness challenges. To the extent the Court has jurisdiction, Defendants argue it should abstain from hearing Community's claims under the *Younger* abstention doctrine.[1] (Doc. 19 at 2.) Both the sovereign immunity and ripeness defenses pose jurisdictional questions, so in that respect this motion is governed by Federal Rule of Civil Procedure 12(b)(1).

---

[1] Defendants ask in the alternative for this Court to dismiss Community's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. However, because the Court finds it should abstain from hearing Community's claims under *Younger*, it does not look to whether Community has failed to state a claim.

*See Digital Props. v. City of Plantation*, 121 F.3d 586, 591 (11th Cir.1997) (ripeness); *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996) (sovereign immunity). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

A "facial attack" on the complaint asks the Court to determine whether the plaintiff has alleged a basis for subject matter jurisdiction and takes the allegations in the complaint as true for the purposes of the motion. *Stalley* ex rel. *U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008). On the other hand, a "factual attack" challenges the existence of subject matter jurisdiction using material extrinsic to the pleadings, such as affidavits or testimony. *Id.* at 1233. "Since such a motion implicates the fundamental question of a trial court's jurisdiction, a 'trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case' without presuming the truthfulness of the plaintiff's allegations." *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925(11th Cir. 2003)). Here, Defendants rely on a number of exhibits submitted with their motion to dismiss, the Court thus construes Defendants' motion as a "factual attack."

III.    DISCUSSION

Community's claims for relief implicate the limits of the Court's subject matter jurisdiction under the Eleventh Amendment and ripeness doctrine. After determining it has subject matter jurisdiction over some of these claims, the Court then finds that it should abstain from hearing Community's remaining claims under the *Younger* doctrine.

## A. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment generally grants state officials sued in their official capacities immunity from suits brought by private citizens. See U.S. CONST. AMEND. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). States can waive their Eleventh Amendment immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Alabama has not waived its sovereign immunity. *See id.*; *see also* ALA. CONST. OF 1901, art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). The Eleventh Circuit has held that the Attorney General and County Sheriffs of Alabama are state officials protected from suit under the Eleventh Amendment. *Melton v. Abston*, 841 F.3d 1207, 1234 (11th Cir. 2016) (Eleventh Amendment immunity applies to Alabama Sheriffs); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336-40 (11th Cir. 1999) (discussing Eleventh Amendment immunity's application to suits against Alabama Attorney General).

Congress can also abrogate Eleventh Amendment immunity in certain situations. *Fla. Prepaid*, 527 U.S. at 670. "Congress can abrogate [E]leventh [A]mendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 (1985)). While Congress has the power to do so, it has never abrogated Eleventh Amendment immunity in § 1983 cases. *Carr*, 916 F.2d at 1525 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

The doctrine of *Ex Parte Young* also provides a long-recognized exception to state official immunity where the claimant seeks prospective equitable relief to end continuing violations of federal law. 209 U.S. 123 (1908); *see Frew* ex rel. *Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1220 (11th Cir. 2000) ("[T]he Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief."). In order for the doctrine of *Ex parte Young* to apply, the Court must determine whether (1) the "complaint alleges an ongoing violation of federal law" and (2) "seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The limits of the doctrine arise where the claimant

alleges ongoing violations of state rather than federal law. *Pennhurst*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."); *see also Steffel v. Thompson*, 415 U.S. 452, 475 (1974) ("We therefore hold that, regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied.").

The availability of the *Ex parte Young* doctrine first turns on whether Community seeks retrospective or prospective relief. In the "Claims" section of its Amended Complaint, Community argues Defendants are continuing ongoing violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment. (Doc. 18 at 8-9.) Community has couched its equal protection injuries as follows: "[t]he State of Alabama has disparately applied gaming laws to tribal and non-tribal citizens" and "Defendants have disparately applied the provisions of the Alabama Criminal Code to bingo and pari-mutuel betting operations." (Doc. 18 ¶¶ 45-46.) It further alleges a violation of due

process: "That seizing the electronic bingo machines without issuing a hearing will deprive Community [of] their liberty or property interests in the Alabama state courts of due process of law." (*Id.* ¶ 50.) Community has clearly stated in this section what *injuries* it has suffered.

Also in its "Claims" section, Community asks for "relief" under 42 U.S.C. § 1983 against Sheriff Hale and Attorney General Marshall, but only vaguely indicates what kind of relief it seeks under that statute. (*See* Doc. 18 ¶ 47 ("Community's [sic] move for relief on this [Fourteenth Amendment Equal Protection] claim directly under the Constitution and as an action seeking redress of the deprivation of statutory rights under the color of state law, also under 42 U.S.C. § 1983"); *id.* ¶ 51 ("Plaintiff moves for relief on this [Fourteenth Amendment Due Process] claim as an action seeking redress of the deprivation of statutory rights under the color of state law, also under 42 U.S.C. § 1983.").) In its response to Defendants' motion to dismiss, Community states that it *only* alleges ongoing violations of federal constitutional law. (*See* Doc. 24 at 13.)[2] Any claim made by Community for retrospective relief against Sheriff Hale and Attorney General Marshall is clearly barred by the Eleventh Amendment.

---

[2] Any references to Doc. 24's pagination refer to that assigned by PACER.

Community then goes on in a "Counts" section of its Amended Complaint—which is separate from the "Claims" section—to ask for specific prospective relief, but also to allege injuries entitling it to that relief which differ from those injuries in its "Claims" section. (Doc. 18 at 52-57.) Community's first count asks for a temporary restraining order, which has been mooted by agreement of the parties as reflected in this Court's March 1, 2017 Order. (Doc. 6.) The remaining two counts, however, receive detailed attention below.

Count Two, "Requests for Preliminary Injunction" states the following injuries and requested relief:

55. WHEREFORE, Plaintiff respectfully requests this Court [for] the following:

a. To issue an immediate preliminary injunction enjoining the Defendants *from interfering with or closing their charity bingo operations on any pretext*. If preliminary injunction is not granted, Community will be caused to suffer immediate and irreparable injury, harm and/or damage. Additionally, Plaintiff has no other adequate remedy at law, the balance of harm favors the Community, Community is likely to prevail on the underlying issues and public interests favor the granting of said relief.

b. To issue an immediate preliminary injunction *enjoining the Defendants from enforcing all provisions of the Alabama Criminal Code on all bingo operations under Alabama's bingo constitutional amendments*. If a preliminary injunction is not granted, Community will be caused to suffer immediate and irreparable injury, harm and/or damage. Additionally, Plaintiff has no other adequate remedy at law, the balance of harm favors the Plaintiff

and Plaintiff is likely to prevail on the underlying issues and public interests favor the granting said relief.

(Doc. 18 ¶ 55 (emphasis added).) Subsection "a" asks for relief in the form of a preliminary injunction, but does not specifically state the basis outside of a reference to "pretext." This could seemingly refer to the earlier equal protection or due process arguments. Subsection "b" can be read in harmony with the earlier "Claims" section to the extent that Community alleges Alabama has disparately applied the Alabama Criminal Code to bingo and pari-mutuel betting operations, which Community alleges is a violation of Equal Protection. (*Compare* Doc. 18 ¶ 46 *with id.* ¶ 55.)

Count Three, "Request for Declaratory Relief and Preliminary Injunction"[3] states the following injuries and requested relief:

57. WHEREFORE, Community respectfully requests this Court [for] the following:

    a. To enter a judgment *declaring that Community is operating its charity bingo facility in accordance with the bingo ordinance and that the bingo ordinance is enforceable under the Amendment so that any attempt to interfere with or to cause the cessation of Community's charity bingo operations* would violate federal law.

    b. To enter a *judgment declaring that all bingo operations under Alabama's bingo constitutional amendments are exempt from the general prohibition of the Alabama Criminal Code so that any*

---

[3] It appears that Community intended to ask in Count Three for a permanent, not preliminary, injunction.

attempt to enforce these provisions on these bingo operations would violate federal law.

    c. To enter a permanent injunction against the State of Alabama *prohibiting them from interfering with Community's lawful charity bingo operations.*

    d. To enter a permanent injunction prohibiting the Defendants *from enforcing all provisions of the Alabama Criminal Code on all bingo operations under Alabama's bingo constitutional amendments.* . . .

(Doc. 18 ¶ 57 (emphasis added).) The relief asked for in Count Three, which revolves around the interpretation of state law, cannot be read in harmony with the federal constitutional injuries identified in the "Claims" section. Subsection "a" blatantly asks the Court to declare Community's bingo operation lawful under Alabama law "so that any attempt to interfere with or to cause the cessation of Community's charity bingo operations would violate federal law." (*Id.* ¶ 57(a).) It is unclear how federal law is implicated in the interpretation of Community's bingo operation, even if the Court gave the asked-for relief and declared Community's bingo operation legal under Alabama law. *Brown v. Georgia Dep't of Revenue*, 881 F.2d 1018, 1023 (11th Cir. 1989) (holding that the determinative issue on whether prospective injunctive relief against a state official is barred by the Eleventh Amendment immunity under *Pennhurst* "is not the relief ordered, but whether the relief was ordered pursuant to state or federal law."). While the Defendants would

violate federal law by disobeying this Court's order if it gave the relief stated in Subsection "a", the order itself would still be under state law. *See id.* at 1024 (Since the relief granted was based on a violation of state *and federal* due process, it is immaterial whether the Court ordered the hearing to comply with state personnel rules as the violation was in part of federal law.). Community's creative prayer for relief does not obscure the bare fact that it asks for this Court to declare the Defendants' actions a violation of *state, not federal* law. This it cannot do. *Pennhurst*, 465 U.S. at 106; *see also Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 2011 WL 197959, at *13 (M.D. Ala. Jan. 20, 2011) (refusing under the Eleventh Amendment to grant injunctive and declaratory relief against State of Alabama for enforcement of state gambling laws where basis for relief was in state, not federal law). The same goes for the declaratory relief asked for in subsection "b"; regardless of any references to federal law, Community is asking the Court to declare an ongoing violation of Alabama law, which is clearly barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 106. The Court cannot grant declaratory relief under either subsection.

Subsection "c" asks the Court to enjoin the State of Alabama from interfering with Community's "lawful" bingo operation. (*Id.* ¶ 57(c).) The "lawfulness" of the bingo operation that is being challenged by Community is a

matter of state law; the United States Constitution does not protect bingo. The Court cannot enjoin Defendants under *Pennhurst* in this manner because Community is ultimately arguing Defendants' enforcement actions are based on an erroneous reading of state law. 465 U.S. at 106. The same Eleventh Amendment protections apply to the relief requested in subsection "d," as Community again asks for prospective relief of a violation of the Alabama Constitution. *Id.* The Court cannot enjoin the Defendants for any of the injuries stated under Count Three because the *Ex parte Young* exception to Eleventh Amendment protections does not apply to violations of state law.

The Eleventh Amendment does not serve to totally cut off all of Community's claims. To the extent that Community can show a prospective violation of federal law by Defendants' actions, it has passed this first jurisdictional hurdle. The Court identifies three claims that require further attention: (1) Defendants have disparately applied gaming laws to tribal and non-tribal citizens; (2) Defendants have disparately applied the provisions of the Alabama Criminal Code to bingo and pari-mutuel betting operations; and (3) Defendants' seizure of electronic bingo machines without a hearing deprives Community of their liberty or property interests without due process of law. (Doc. 18 ¶¶ 45-46, 50.)

## B. RIPENESS OF COMMUNITY'S DUE PROCESS CLAIM

Article III of the United States Constitution permits federal courts to adjudicate "cases or controversies of sufficient concreteness to evidence a ripeness for review." *Digital*, 121 F.3d at 590; *see also* U.S. CONST. art. III, § 2 cl. 1 *et seq.* When assessing whether a claim is ripe for judicial review, courts must take both constitutional and prudential concerns into consideration. A claim for relief is not ripe for adjudication when it rests upon "contingent future events that may not occur as anticipated . . . ." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985). Engaging in a "[s]trict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Nat'l Advertising Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) (citing *Digital*, 121 F.3d at 589). The ripeness determination "goes to whether the district court ha[s] subject matter jurisdiction to hear the case." *Digital*, 121 F.3d at 591 (citing *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.7 (11th Cir. 1989).

Defendants bring a two-pronged attack as to Community's claim that they have violated due process in their seizure of its gambling equipment: any due process claim based on a lack of pre-seizure hearing fails as a matter of law, where any claim based around defects in the post-seizure hearing is unripe. (Doc. 19 at 18.) Defendants specifically state that Community's post-seizure due process claim

fails because the state civil forfeiture case is ongoing. (*Id.* at 19.) The Court addresses the post-seizure hearing here, as ripeness is a threshold matter of subject matter jurisdiction. While the Court ultimately finds that the ripeness doctrine does not bar Community's post-seizure due process claims, it does so because Eleventh Circuit precedent commands dismissal of Community's due process claims with prejudice under Federal Rule of Civil Procedure 12(b)(6). *See Horton v. Board of Cty. Comm'rs of Flagler Cty.*, 202 F.3d 1297, 1301-02 (11th Cir. 2000).

The Due Process Clause of the Fourteenth Amendment encompasses a guarantee of fair procedure. Where a § 1983 action may be sustained for a violation of procedural due process, the determinative question is not whether the Plaintiff is deprived by state action of an interest in life, liberty, or property; what is unconstitutional is when the plaintiff is deprived of those interests without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The:

> constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Id.* at 126. Under *Zinermon*'s construction of procedural due process violations, *McKinney v. Pate* held that where a plaintiff sues in federal court alleging constitutionally deficient procedural failings in an administrative action, but does not take advantage of state remedies before doing so, that he has failed to state a claim. 20 F.3d 1550, 1557, 1566-67 (11th Cir. 1994) (en banc). In holding so, *McKinney* made unfortunate allusions to the "ripeness" of procedural due process claims. *Id.* at 1560. Subsequently, *Horton* restated *McKinney*'s holding: where state law provides an adequate remedy for the type of procedural deprivation that a plaintiff claims to suffer, ripeness is not implicated. 202 F.3d 1297, 1301 (11th Cir. 2000) ("[W]e did not tell McKinney his federal claim was unripe and dismiss it without prejudice to his pursuing that claim in state court. Instead, we told him that he lost."). *Horton* further shows decisions after *McKinney* also dismissed similar actions on a plaintiff's failure to state a claim and not on ripeness grounds:

> The district court in this case cited the panel decision in *Flint Electric Membership Corp. v. Whitworth*, 68 F.3d 1309, 1313-14 (11th Cir.1995). That opinion originally contained the following sentence: "It has also become evident, in light of *McKinney*, that the EMCs' procedural due process claims are not ripe for review." *Id.* at 1313. That sentence was withdrawn on rehearing, however, and the *Flint* panel substituted for it the following one: "It has also become evident, in light of *McKinney*, that the EMCs failed to state a procedural due process claim." *Flint Electric Membership Corp. v. Whitworth*, 77 F.3d 1321 (11th Cir.1996) (on rehearing). In other words, like the district court in this case, the *Flint* panel initially misread *McKinney* as a ripeness decision, but the panel corrected that mistake on rehearing and modified its opinion to

indicate that *McKinney* has to do with whether a procedural due process claim has been stated at all.

*Horton*, 202 F.3d at 1301 n.4.

Like the district court in *McKinney* and the original panel decision in *Flint*, Defendants' ripeness argument unfortunately misunderstands *McKinney* to command dismissal of Community's claims on ripeness grounds. Defendants argue that Community's due process violation is unripe because there are adequate state procedures available to Community to address its claims and that Community has not been finally deprived of its property. Community's failure to utilize adequate state procedure is exactly the situation discussed in *McKinney*, *Flint*, and *Horton*; all three decisions held their respective plaintiff's failed to state a claim. The Court finds that Community's claim for violation of due process is ripe. *See McKinney*, 20 F.3d at 1566-67; *see also Horton*, 202 F.3d at 1301. It does not dismiss this claim under Federal Rule of Civil Procedure 12(b)(6) because it ultimately abstains from hearing Community's claims under *Younger*.

## C. *YOUNGER* ABSTENTION

Finally, this Court must determine whether matters of comity and federalism require it to abstain from hearing this case in favor of the current state-court proceedings. While federal courts have a "virtually unflagging obligation," *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (citation omitted), to adjudicate claims

within their jurisdiction, "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans ("NOPSI")*, 491 U.S. 350, 359 (1989) (quoting *Younger v. Harris*, 401 U.S. 37, 45 (1971). *Younger* identified one such class, holding a federal court should abstain from hearing a case where doing so would interfere with ongoing state proceedings. 401 U.S. 37. Although *Younger* concerned state criminal proceedings, its principles are "fully applicable to noncriminal judicial proceedings when important state interests are involved." *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). *NOPSI* elaborated on the specific "exceptional circumstances" where *Younger* abstention is proper. 491 U.S. at 367-68. *Sprint Communications, Inc. v. Jacobs* summarizes those exceptional circumstances:

> First, Younger precluded federal intrusion into ongoing state criminal prosecutions. Second, certain "civil enforcement proceedings" warranted abstention. Finally, federal courts refrained from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."

134 S. Ct. 584, 591 (2013) (internal citations omitted).

There does not appear to be post-*NOPSI* Eleventh Circuit precedent holding that a court should abstain under *Younger* while state civil forfeiture proceedings of

the type instituted by Defendants are pending. The Court is nonetheless satisfied that the current civil forfeiture action styled *State of Alabama v. Harris, et al.* constitutes "civil enforcement proceedings" meriting abstention as exemplified in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). *See NOPSI*, 491 U.S. at 367-68 (citing *Huffman* as exemplar of "civil enforcement proceeding"). *Huffman* held *Younger* abstention was proper where appellants had sued appellees in Ohio state court under a public nuisance statute for their operation of theater showing obscene films. 420 U.S. at 611. The public nuisance statute provided among other remedies seizure and sale of personal property used in appellee's operation. Appellees then instituted a federal action, seeking injunctive and declaratory relief against enforcement of the statute. *Id.* at 598. *Younger* abstention was appropriate because the public nuisance suit was "in important respects is more akin to a criminal prosecution . . . . and the proceeding [wa]s both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials." *Id.* at 604. While the lower court's injunction had not directly disrupted Ohio's criminal justice system, "it has disrupted that [s]tate's efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws." *Id.* at 605.

The currently pending civil forfeiture proceeding against Community and other defendants involves the same concerns as the nuisance action in *Huffman*. Like in *Huffman*, where Ohio attempted to enforce its criminal laws against the appellants through a nuisance action, here the Alabama is attempting to enforce its criminal laws against illegal gambling, *see* Ala. Code. § 13a-12-20 *et seq.*, by means of a civil forfeiture action that has as a prerequisite a finding that the *res* was "possessed or used in violation of [Ala. Code. § 13a-12-20 *et seq.*]" (*See* Doc. 19 Ex. 3 ¶¶ 3-5.); *see also* Ala. Code. § 13a-12-30(a) ("Any gambling device or gambling record possessed or used in violation of this article is forfeited to the state, and shall by court order be destroyed or otherwise disposed of as the court directs."). Entertaining this action would disrupt Alabama's "efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws." *Huffman*, 420 U.S. at 605.

Under *Middlesex*, a Court must satisfy itself of three elements before it applies the *Younger* doctrine: "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *31 Foster Children*, 329 F.3d at 1274 (quoting

*Middlesex*, 457 U.S. at 432). The parties disagree on the existence of all three elements, so the Court looks at each in turn.

### i.   THERE IS AN ONGOING STATE JUDICIAL PROCEEDING

Community is a named defendant having a property interest in the seized property that is the subject of the civil forfeiture action pending in the Civil Court of Jefferson County, Alabama. *See Alabama v. Harris, et al.*, cv-2017-900185 (2017); (Doc. 19 Exs. 3-4).  The seized property in that case is the same as the property in dispute here.

Community challenges the "ongoing" nature of *Alabama v. Harris, et al.*, arguing that at the time of filing of the present action the state proceeding was not pending. *Steffel* stated that federal courts do not interfere with principles of comity and federalism, and thus *Younger* abstention is improper, where there is no ongoing parallel state proceeding:

> When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.

415 U.S. at 462. Just a year later *Hicks v. Miranda* clarified that the "ongoing" nature of state proceedings must not be strictly construed along something akin to a "first to file" rule:

[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of Younger v. Harris should apply in full force.

422 U.S. 332, 349 (1975); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 n.1 (1992) (referring to *Younger*'s first requirement as "an already-pending or an about-to-be-pending state criminal action, or civil action involving important state interests").

Community has cited a number of precedential cases where the Supreme Court held *Younger* abstention was improper because there was no "pending" state court action. The facts of these cases are distinguishable from those before the Court; these cases' holdings, however, support the Court's decision to abstain under *Younger*. *Doran v. Salem Inn, Inc.* reversed a lower court's abstention under *Younger*, but only because "[n]o state proceedings were pending against either [plaintiff] at the time the [d]istrict [c]ourt issued its preliminary injunction." 422 U.S. 922, 930 (1975). Because there is a state civil forfeiture action currently pending, the Court's decision to abstain is in harmony with *Doran*. *Wooley v. Maynard* in turn held that *Younger* did not bar federal court intervention where the plaintiff, who was only threatened with further prosecution but not party to an ongoing state criminal proceeding, sought an injunction barring *future prosecution*. 430 U.S 705, 709-10 (1977). *Wooley* is distinguished from Community's case

because the State of Alabama has already seized Community's gambling equipment.

The first element of *Younger* is met in this case, because while the state civil forfeiture proceeding was not instituted at the beginning of this action it was an "about-to-be pending" action that Community could clearly foresee. The State of Alabama delayed in filing its civil forfeiture action until March 6, 2017, but state action had already begun against Community before it filed this lawsuit on the afternoon of February 24, 2017. The State of Alabama's clear enforcement action vitiated the concern voiced in *Steffel* of stranding a "hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." 415 U.S. at 462. The Defendants had already moved well past *threatening* enforcement of state law; they had received and executed a search warrant on Community's property and seized Community's gambling devices. It is immaterial if the civil forfeiture action was filed by the State of Alabama ten days after the filing of the present suit because Community knew exactly where it stood. (Doc. 19 Ex. 3.) After all, the ongoing or pendency requirement exists to protect state court actions from duplicative or disruptive federal proceedings. *Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1339

(11th Cir. 1999). Refusing to abstain under *Younger* and continuing to hear this action as a result of stubborn formalism would inflict exactly the harm to the state that *Younger* is intended to prevent.

### ii. THE PROCEEDINGS CONSTITUTE AN IMPORTANT STATE INTEREST

It is evident that important state interests are involved in both the underlying case and this current litigation. "The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as is *Huffman*, . . . Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation." *Middlesex*, 457 U.S. at 432; *see also Huffman v. Pursue, Ltd.*, 420 U.S. at 604 ("[I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies.").

Defendants have addressed the important state interest being vindicated in the civil forfeiture action. (Doc. 19 at 22.) They seek to effectuate Alabama's laws prohibiting certain types of gambling; there is likewise an important state interest in providing a state-court forum for Community to object to Defendants'

interpretation of Alabama law on federal constitutional grounds. The second *Middlesex* element is satisfied.

### iii. THERE IS AN ADEQUATE OPPORTUNITY IN THE STATE PROCEEDINGS TO RAISE CONSTITUTIONAL CHALLENGES

Finally, the Court concludes that Community has an adequate opportunity to raise constitutional challenges in the current state civil forfeiture proceeding. While Community argues that Alabama state courts will not provide "fair procedures and impartial decision making," (doc. 24 at 18), it does not show how Alabama courts are deficient. Community bases this heavy accusation on its reading of Alabama Supreme Court precedent in previous electronic bingo cases. (Doc. 24 at 34.)

According to Community, the Alabama Supreme Court's past interpretation of constitutional amendments and criminal code as prohibiting electronic bingo shows its bias and lack of fairness because "[the Alabama Supreme Court] refuse[s] to really understand the difference of what electronic bingo machine is and a slot machine [is]." (Doc. 24 at 35.) Community likewise argues that the Alabama Supreme Court has given inconsistent rulings concerning the subject matter jurisdiction of state civil and criminal courts in bingo cases. (Doc. 24 at 34 (citing *Tyson v. Macon Cty. Greyhound Park, Inc.*, 43 So. 3d 587, 592-595 (Ala. 2010).) In *Tyson*, following a raid on their property by the State of Alabama, the

plaintiffs/gambling-machine owners filed a state civil proceeding asking for a declaration that their gambling operation was legal under Alabama law and an injunction against the State of Alabama ordering the return of seized contraband. The plaintiffs argued, much as Community does here, that they would not receive due process in a state civil-forfeiture proceeding. *Id.* at 591. *Tyson* held that the suit instituted by the plaintiffs was an improper attempt to circumvent state civil forfeiture proceedings. However, a dissenting Justice noted the incongruity in the Court's holding with *State* ex rel. *Tyson v. Ted's Game Enterprises*, 893 So. 2d 355 (Ala. Civ. App. 2002), *aff'd, Ex parte Ted's Game Enterprises*, 893 So. 2d 376 (Ala. 2004), where the Alabama Supreme Court permitted the State of Alabama to seek a declaratory judgment that certain gambling machines were illegal. *See Tyson*, 43 So. 3d at 593 (Woodall, J., dissenting).

Nothing contained in *Tyson*, however, shows how the civil forfeiture proceeding itself is flawed. Far from showing any procedural defect, *Tyson* blazes the proper trail for Community to seek redress for its constitutional injuries—state civil forfeiture proceedings. Regardless of the merits of Community's definition of "bingo" under Alabama law, this Court cannot usurp state-court authority to redefine Alabama's statutes and constitution because of a perceived error of *state law. Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996); *Butler v. Ala. Judicial Inquiry*

*Comm'n*, 245 F.3d 1257, 1262 (11th Cir.), *certified question answered*, 802 So. 2d 207 (Ala. 2001) (quoting *Middlesex*, 457 U.S. at 431) ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.").

Community additionally argues that Alabama courts are deficient because the Alabama constitution does not have an equal protection clause. This argument misunderstands the third *Middlesex* element. Plaintiffs still can bring their *federal* constitutional claims in state court and indeed would be able to mount a number of state-law challenges to Defendants' actions that they cannot here because of *Ex parte Young. See* Section III.A *supra*. The Court's abstention occurs without regard to the presence or absence of a *state* equal protection clause.

## IV.    CONCLUSION

To the extent Community makes claims for declaratory and injunctive relief under state law, those claims are due to be DISMISSED without PREJUDICE because the Court lacks subject matter jurisdiction under the Eleventh Amendment. While the Court does have subject matter jurisdiction under *Ex parte Young* to hear Community's allegations of Defendants' ongoing violations of federal law, it ABSTAINS from doing so under *Younger*. This case is therefore due

to be DISMISSED without PREJUDICE. An Order consistent with this Opinion will be entered separately.

DONE and ORDERED on October 27, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

190485